IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
JONESBORO DIVISION

STACY DOWDY QUINN                                                                                       PLAINTIFF

vs.                                          NO. 3:04CV00328 JWC

JO ANNE B. BARNHART,
Commissioner, Social
Security Administration                                                                                 DEFENDANT

**MEMORANDUM AND OPINION**

Plaintiff, Stacey Quinn, appeals the final, adverse decision of the Commissioner denying her claims for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI).

The Court's function on review is to determine whether the Commissioner's decision is supported by substantial evidence on the record as a whole and whether it is based on legal error.  *Long v. Chater*, 108 F.3d 185, 187 (8th Cir. 1997); *see also*, 42 U.S.C. § 405(g).  Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Reynolds v. Chater*, 82 F.3d 254, 257 (8th Cir. 1996).  Provided that substantial evidence supports the Commissioner's decision, this Court may not reverse even if the record also provides substantial evidence to support a contrary outcome.  *Haley v. Massanari*, 258 F.3d 742, 747 (8th Cir. 2001).

Plaintiff alleges an onset of disability of March 15, 2002, due to a learning disability and depression.  At the hearing, she also testified she suffered from back pain, anemia, panic disorder,[1] and headaches (Tr. 265).  Plaintiff was 22 years old at the time of the

---

[1] Plaintiff testified that she was kidnapped at 16, and was molested as a child until the age of 10 (Tr. 266, 272).

hearing, with a tenth grade education (Tr. 261). She had past work experience as a cashier/stocker, housekeeper, fast food cashier, file clerk, and Wal-Mart worker (Tr. 276-77).

The ALJ analyzed Plaintiff's claim according to the five-step sequential evaluation required by 20 C.F.R. § 404.1520. The ALJ found at step one that Plaintiff had not engaged in substantial gainful activity since the alleged onset date; at step two, that her lumbar strain, migraine headaches, post-traumatic stress disorder (PTSD) with anxiety and depression, and borderline intellectual functioning were severe impairments; and at step three that she did not meet the criteria of any of the listings set forth in Appendix I to Subpart P, Regulations No. 4 and No. 16. He found that Plaintiff's subjective allegations were not fully credible and that she retained the residual functional capacity (RFC) to perform unskilled light work. At step four, the ALJ found she was unable to perform her past relevant work as cashier/stocker, housekeeper, fast food cashier, file clerk, or as a Wal-Mart worker. At step five, utilizing the testimony of a vocational expert (VE), the ALJ determined that a significant number of jobs existed in the national economy which Plaintiff could perform, such as sewing machine operator, chicken cleaner, and turkey roll maker (Tr. 18-19). The hypothetical the ALJ posed to the VE included limitations properly supported by the evidence and specifically limited Plaintiff to unskilled work, but did not expressly mention that she functioned at the borderline intellectual level. The ALJ concluded that Plaintiff was not disabled.

Plaintiff's only argument on appeal is that there is not substantial evidence to support the ALJ's decision because the ALJ did not include Plaintiff's borderline intellectual functioning in his hypothetical question to the VE. At the hearing, the ALJ asked the VE

2

to assume an individual with the same age, educational background, and past work experience as Plaintiff, who was limited to light work of an unskilled [2] nature, involving only superficial interpersonal contact, and no direct dealing with the public (Tr. 277-78).  The VE testified that Plaintiff could not return to any of her past jobs, but that she could perform other work [listed in the Dictionary of Occupational Titles (DOT)] such as sewing machine operator, chicken cleaner, or turkey roll maker (Tr. 278).

In 1993, when Plaintiff was 11, she underwent a psycho-educational evaluation which revealed a verbal IQ of 80, a performance IQ of 82, and a full scale IQ of 80 (Tr. 142).[3]  This is consistent with borderline intellectual functioning, which is defined as an IQ in the 71-84 range. *Diagnostic and Statistical Manual of Mental Disorders*, 684 (4th Ed. 1994).  Additionally, in February 2003, Plaintiff underwent a consultative mental status and evaluation of adaptive functioning in which Hope Gilchrist, Ed.D., estimated Plaintiff's IQ to be 71 to 79 and diagnosed borderline intellectual functioning (Tr. 164-66).  Accordingly, the ALJ specifically found that Plaintiff suffers from borderline intellectual functioning (Tr. 17, 19).

Borderline intellectual functioning is a significant nonexertional impairment that must

---

[2] Unskilled work is defined as work where interpersonal contact is only incidental to work performed, performed tasks can be no more complex than those learned and performed by rote with few variables and little judgment.  Simple, direct and concrete supervision is required. 20 C.F.R. § 404.1568 (Eg. Tr. 19, 69).

[3] The results of that test are not sufficiently current.  Generally, the results of IQ tests tend to stabilize by the age of 16.  Therefore, IQ test results obtained at age 16 or older should be viewed as a valid indication of the child's current status, provided they are compatible with the child's current behavior.  IQ test results obtained between ages 7 and 16 should be considered current for 4 years when the tested IQ is less than 40, and for 2 years when the IQ is 40 or above. IQ test results obtained before age 7 are current for 2 years if the tested IQ is less than 40 and 1 year if at 40 or above. 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 112.00 D. 10. (2001) (2002).

be considered by a VE. *Holz v. Apfel*, 191 F.3d 945, 947 (8th Cir. 1999). Plaintiff contends that simply limiting the VE's consideration to unskilled work and omitting the existence of a borderline IQ is not sufficient. The Commissioner correctly contends that a hypothetical question need not include specific diagnoses if other descriptive terms adequately define the claimant's impairments. *Howard v. Massanari*, 255 F.3d 577, 582 (8th Cir. 2001). In *Howard,* the court found that a hypothetical question limiting the claimant to simple, routine, repetitive tasks adequately accounted for limitations caused by borderline intellectual functioning. *Id.* The Commissioner also points to *Hilkmeyer v. Barnhart*, 380 F.3d 441, 446-47 (8th Cir. 2004) where the court found that a claimant limited to simple repetitive tasks, *no work with the public*, and a *limited degree of contact with co-workers and supervisors* adequately accounted for a moderate *social* dysfunction. (Emphasis added.) Both *Howard* and *Hilkmeyer* are distinguishable from the instant case. Here, the specific limitations of only superficial interpersonal contact, and no direct dealing with the public are not descriptive of her borderline intellectual functioning, but rather, relate to her panic attacks. The issue for decision here is whether limiting Plaintiff to unskilled work in the hypothetical is sufficient to account for Plaintiff's borderline intellectual functioning. While this may be a close question, the Court concludes that it is not.

The Eighth Circuit has recognized there are numerous unskilled jobs that may be beyond the ability of those with borderline intellectual functioning because, for example, they require a worker to have the ability to understand and carry out detailed, rather than simple, work instructions. *See Pickney v. Chater,* 96 F.3d 294, 296-97 (8th Cir. 1996) (improper to assume that the claimant's mental impairments, including borderline

4

intellectual functioning, were irrelevant for the performance of unskilled jobs); *Lucy v. Chater*, 113 F.3d 905, 909 (8th Cir. 1997) (noting that many unskilled jobs require the ability to understand and follow detailed rather than simple instructions)**.**  As *Lucy* points out, "For each job described, the *Dictionary of Occupational Titles* specifies the type of reasoning capabilities the job requires.  2 U.S. Dep't of Labor, *Dictionary of Occupational Titles,* 1010-11 (4th ed.1991)."  It appears from the DOT that at least two of the potential jobs mentioned by the VE require a greater level of intellectual functioning than borderline.[4]  The remaining job, chicken cleaner, carries an intellectual functioning level consistent with borderline functioning, but seems to require the ability to perform more complex tasks.  It may well be that the VE's opinion would be changed if the hypothetical contained the specific limitation of borderline intellectual functioning.

Because the hypothetical did not adequately account for Plaintiff's borderline intellectual functioning, this case must be reversed and remanded so that the ALJ can submit a proper hypothetical to the VE.  As noted, Plaintiff's IQ test results are not considered current.  Therefore, on remand, the ALJ must send Plaintiff for IQ testing to verify her level of intellectual functioning before submitting a revised hypothetical.

The Court notes that Plaintiff's attorney was present at the hearing and had the opportunity to request that the ALJ restate the hypothetical question to include her borderline intellectual functioning, or to himself cross-examine the VE and raise the issue. The failure to raise the argument at the administrative level ordinarily prevents a party from raising it in judicial proceedings.  Counsel is warned that the Court will in future cases

---

[4] Turkey roll maker and sewing machine operator.

consider whether such failure will preclude review. However, in this case, the question is close enough that the Court will not invoke the doctrine of waiver.

IT IS THEREFORE ORDERED THAT the Commissioner's decision is reversed and remanded. This is a "sentence four" remand within the meaning of 42 U.S.C. § 405 (g) and *Melkonyan v. Sullivan,* 501 U.S. 89 (1991).

IT IS SO ORDERED this 30th day of August, 2005.

_____
UNITED STATES MAGISTRATE JUDGE